1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

11
12
13
14
15
16
17

| | |
|---|---|
| JAMIE LYNN LENEX,<br><br>              Plaintiff<br><br>       v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>              Defendant | CASE NO. 1:15-cv-00581-BAM<br><br>ORDER REGARDING PLAINTIFF'S<br>SOCIAL SECURITY COMPLAINT |

18
19
20
21
22
23
24
25
26
27
28

<u>**INTRODUCTION**</u>

Plaintiff Jamie Lenex ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Social Security Act.  The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe.  The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

///

## FACTS AND PRIOR PROCEEDINGS

On October 22, 2012, Plaintiff filed her current applications for DIB and SSI alleging disability beginning September 15, 2012. AR 191-197, 198-206.  Both applications were denied initially and upon reconsideration. AR 111-115, 126-132.  Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Following a hearing, ALJ Sharon L. Madsen issued a decision on January 6, 2015 denying benefits. AR 10-30.  On February 9, 2015, the Appeals Council denied review rendering the ALJ's decision the final determination by the Social Security Administration. AR 1-4.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 6-9. This appeal followed.

### Background

In 1991, at age 13, Plaintiff was involved in a major motor vehicle accident in which she broke her knee and lower leg, a door handle was imbedded in her leg, and the growth plate of her left leg was broken which resulted in different leg lengths as she matured. AR 389, 399.  Plaintiff alleges disabling symptoms of chronic back, hip, and knee pain resulting, in part, from this motor vehicle accident.  Plaintiff also alleges disabling symptoms of depression. (Doc. 16 at 7-11).

### Hearing Testimony

The ALJ held hearing on December 2, 2014 in Fresno, CA. AR 31. Plaintiff appeared and testified, along with representative Melissa Proudain and impartial Vocational Expert ("VE") Thomas Dachelet. AR 33.

In response to questions from the ALJ, Plaintiff testified that she lived with her sister, possessed a driver's license, and could drive. AR 35.  She said she earned an associate's of science degree and was licensed to be a security guard. AR 35-36.  Plaintiff denied needing help showering or dressing, and she affirmed that she did household chores, including cooking, and shopping. AR 36.  She stated she spent most of her time either cooking or watching television for an hour at a time.  AR 36, 46.  Plaintiff said that she could pay attention and follow what she watches on television most of the time but she alleged that at times she was "very confused." AR 43.  Plaintiff testified that she walked her dog or cleaned for about fifteen to thirty minutes while

1  taking a break from television.  AR 46.  She denied that she needed help managing money,

2  budgeting or paying bills. AR 44.

3       When asked about her impairments, Plaintiff alleged that her medication made her sleepy,

4  which required her to take a nap or rest for five hours during the day.  AR 36, 44-45.  She stated

5  that medication dulled the pain enough to get by but that she still had pain to the extent that she

6  "can't do hardly anything." AR 41.  She complained that her back was completely in pain all the

7  time, her knees go out, her legs go numb, she had shooting pain down her legs, and her hips are

8  lopsided because one leg is shorter than the other.  AR 39.  She stated she had more problems

9  when walking and could not sit for a long periods of time because of her back pain.  AR 40.

10 Plaintiff said she had a shoe insert, and used a cane when not at home because her balance was off.

11 AR 40.  Plaintiff claimed that physical therapy had not worked and that a TENS unit only worked

12 on her back.  AR 40-41.  She denied having received any referrals to a neurosurgeon or any other

13 specialist for an evaluation.  AR 41.

14      When asked about her abilities despite her impairments, Plaintiff testified that she could

15 lift and carry five pounds, sit for fifteen to thirty minutes before needing to stand up, and stand for

16 fifteen to thirty minutes before she had to sit down. AR 42.  She said she could walk half a city

17 block.  AR 42.

18      In response to questions about her mental impairments, Plaintiff alleged that due to

19 depression she sometimes becomes isolated, cried for no reason, and experienced too many

20 feelings at one time.  AR 43.  When asked about treatment, medication, and counseling, Plaintiff

21 responded that she was being referred to a psychiatrist and was taking Prozac.  AR 43.  Plaintiff

22 alleged that she stopped seeing her previous psychiatrist, Dr. Morgan, because she did not have

23 insurance. AR 48.  She acknowledged that Prozac helped a little bit, but she alleged that she has

24 problems sometimes getting along with people and isolating herself once a week. AR 43-44.

25      The ALJ asked Plaintiff to discuss her previous work history.  Plaintiff described her past

26 relevant work as a cashier and stocker, and in security, with about seven employers.  AR 36-38.

27 Following Plaintiff's testimony, the ALJ elicited testimony from vocational expert ("VE")

28 Thomas Dachelet. AR 49. In response to a hypothetical posed by the ALJ, the VE testified that an

1  individual of the same age, education and work background as Plaintiff that could lift and carry 20

2  pounds occasionally, ten pounds frequently, sit six to eight hours, stand and walk four hours, with

3  occasional stooping, crouching, crawling, climbing kneeling and balancing could perform the jobs

4  of palletizer (DOT 929.687-054)1, garment sorter (DOT 222.687-014), and package operator

5  (DOT 920.685-082), which all exist in significant numbers in the national and regional economies.

6  AR 50-52.

7      When the VE was examined by the Plaintiff's attorney, the VE testified that no

8  occupations exist for a person who would need an additional two to four breaks of 30 minutes per

9  day. AR 52.

10      **Medical Record**

11      The entire medical record was reviewed by the Court. AR 222-450. The medical evidence

12  will be referenced below as necessary to this Court's decision.

13      **THE ALJ'S DECISION**

14      Using the Social Security Administration's five-step sequential evaluation process, the

15  ALJ determined that Plaintiff did not meet the disability standard. AR 13-26.  The ALJ found

16  Plaintiff had the following severe impairments: lumbar degenerative joint disease, status-post left

17  knee growth-plate fracture with resultant leg length discrepancy, and morbid obesity. AR 15.

18  Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or

19  exceed any of the listed impairments individually or in combination.

20      Based on a review of the entire record, the ALJ determined that Plaintiff has the residual

21  functional capacity ("RFC") to perform light work with the ability to lift and carry twenty pounds

22  occasionally, and ten pounds frequently, stand and walk four hours in an eight-hour day, and sit

23  six to eight hours out of an eight hour day with normal breaks, and occasionally stoop, crouch,

24  crawl, climb, kneel, and balance.  AR 18. The ALJ found that Plaintiff could not perform any past

25  relevant work, but that there were jobs that existed in significant numbers in the national economy

26  that Plaintiff could still perform. AR 24.  The ALJ therefore concluded that Plaintiff was not

27  disabled under the Social Security Act. AR 26.

28  ///

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that they are not only unable to do their previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

The issues Plaintiff presents are whether the ALJ: (1) adequately developed the record; (2) sufficiently addressed Plaintiff's mental impairment; (3) properly evaluated Plaintiff's credibility; (4) sufficiently considered the lay source testimony; and (5) properly relied on the VE's testimony

1  to find that Plaintiff could perform work as it exists in the national economy.  (Doc. 16).

2  **DISCUSSION**

3  **1.     The ALJ Fully and Fairly Developed the Record**

4  Plaintiff first contends that the ALJ failed to adequately develop the record regarding her

5  "Complex Regional Pain Syndrome ('CRPS')."  (Doc. 16 at 17-18). According to Plaintiff, her

6  treating physician opined that her intense chronic leg and back pain was likely due to Complex

7  Regional Pain Syndrome arising from the injuries she suffered in her motor vehicle accident at age

8  13.  (Doc. 16 at 17). Plaintiff argues that the ALJ failed to properly evaluate her CRPS, and

9  instead relied on medical opinions generated prior to her CRPS diagnosis.

10  An ALJ's duty to develop the record is triggered if there is ambiguous evidence or the

11  record is inadequate for proper evaluation of evidence. When such a duty is triggered, an ALJ can

12  develop the record by: (1) making a reasonable attempt to obtain medical evidence from the

13  claimant's treating sources; (2) ordering a consultative examination when the medical evidence is

14  incomplete or unclear and undermines the ability to resolve the disability issue; (3) subpoenaing or

15  submitting questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the

16  record open for more supplementation. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150; 20 C.F.R. §

17  404.1517.

18  Here, the ALJ's duty to develop the record further was not triggered.  While Plaintiff cites

19  a "likely" diagnosis of chronic regional pain syndrome, made in 2013 and again in 2014, the mere

20  diagnosis of an impairment is not sufficient to sustain a finding of disability. AR 19, 389, 435.

21  *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is

22  insufficient proof of disability); *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  The record

23  demonstrates that the ALJ considered Plaintiff's subjective pain associated with the objective

24  findings of her nonsymmetrical leg lengths, lumbar degenerative disc disease, and obesity.  AR

25  15-19. Based on those findings, the ALJ assessed an RFC for a reduced range of light work that

26  included various postural accommodations that reflected Plaintiff's symptoms of pain supported

27  by the medical evidence. AR 18. Plaintiff has therefore not demonstrated that the record was

28  inadequate with respect to her pain syndrome.

1    Further, the possible diagnosis does not create ambiguity because even assuming CRPS

2    was a medically determinable impairment, the record contained sufficient medical evidence for the

3    ALJ to weigh and conclude that Plaintiff was not disabled. The ALJ weighed the medical

4    evidence, including that of Plaintiff's treating physician, Dr. Dorado, who declined to complete

5    disability forms. AR 19, 23, 347. The ALJ also relied on the opinion of the two examining doctors

6    whose opinions supported the ALJ's finding of non-disability: Examining physician Dr. Georgis

7    found Plaintiff capable of performing light work (AR 21, 344), and examining psychologist Dr.

8    Swanson opined that Plaintiff had no disabling mental limitations. AR 20-21, 335.  Those opinions

9    were also reinforced by the opinions of the four non-examining doctors, all of whom supported the

10   ALJ's assessment of the evidence and conclusion that Plaintiff retained the RFC for a reduced

11   range of light work. AR 21, 65, 90.

12   Finally, despite the thorough evidentiary record, the ALJ kept the record open after the

13   hearing at counsel's request for additional medical records. AR 33, 55. Seventeen days after the

14   hearing, however, counsel informed the ALJ that there were no updated records. AR 328. The fact

15   that the ALJ kept the record open after the hearing for Plaintiff to submit additional evidence is

16   sufficient to satisfy any duty to develop the record. *Tonapetyan*, 242 F.3d at 1150; *Tidwell v.*

17   *Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ's indication to plaintiff and her counsel that he

18   would keep the record open so that they could supplement her doctor's report satisfied ALJ's duty

19   to develop the record).

20   Ultimately, the ALJ did not find that the record was insufficient or inadequate to determine

21   disability. Nor does Plaintiff identify any ambiguous or unclear treatment notes or medical

22   opinions that would result in additional limitations. Plaintiff was further provided the opportunity

23   to present additional medical records concerning her CRPS and failed to do so. For these reasons,

24   the ALJ did not err in developing the record.

25   **2.      The ALJ Properly Considered Plaintiff's Depression**

26   Plaintiff next contends that the ALJ improperly failed to consider her depression as a

27   severe impairment at step two of the sequential evaluation process.

28   At step two, a claimant must make a threshold showing that her medically determinable

impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28, 1985 SSR LEXIS 19). "[T]he step two inquiry is a *de minimis* screening device to dispose of groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153-54).

According to Plaintiff, she was diagnosed with a major depressive disorder and prescribed depression medications including Prozac. AR 361. On March 29, 2013, Plaintiff's symptoms of depression increased and she was diagnosed with a "recent worsening" of her "Major Depressive Disorder." AR 383-84. In September 2014, Plaintiff scored 19 on the Primary Care Evaluation of Mental Disorders scale (a score of 15 is considered moderately severe depression) and her medication was again increased. AR 405, 415.

In finding that Plaintiff's depression was not a severe impairment, the ALJ noted that Plaintiff was diagnosed with depression but found that Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and is therefore nonsevere." AR 15. In support of this conclusion, the ALJ listed abilities and aptitudes that reflected at most mild limitations, including Plaintiff's ability to attend to personal care, attend church, eat out at restaurants, drive a car, and her ability to pay attention for extended periods of time. AR 16; *see* AR 278, 288-291, 292, 293, 335; *see also* AR 22-23, 24. The ALJ also explained that medication controlled Plaintiff's depression and anxiety, and that Plaintiff declined further psychiatric treatment. AR 19, 23; *see* AR 347, 358, 359. The ALJ also gave great weight to the State agency psychological consultants who opined that Plaintiff did not have a severe mental impairment. AR 21-22.

Here, although Plaintiff was diagnosed with depression, this alone is insufficient to warrant a finding of a severe impairment at step two. *See Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997) (*citing Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)) ("[T]he claimant must show more than the mere presence of a condition or ailment."); *see also Holaday v. Colvin*, No. 2:14-cv-1870-

1    KJN, 2016 U.S. Dist. LEXIS 29716, 2016 WL 880971, at *12 (E.D. Cal. Mar. 8, 2016) ("The

2    mere fact that plaintiff was diagnosed with such conditions is, by itself, insufficient to demonstrate

3    that they were 'severe' for step two purposes."); *Mahan v. Colvin*, 2014 U.S. Dist. LEXIS 65255,

4    2014 WL 1878915, at *2 (C.D. Cal. May 12, 2014) ("[A] mere diagnosis does not establish a

5    severe impairment."). As the ALJ noted, there is no evidence that Plaintiff's depression had any

6    impact on her ability to work. *See Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (an

7    impairment is not severe if it is merely a slight abnormality that has no more than a minimal effect

8    on one's ability to do basic work activities). Therefore, the ALJ properly determined that

9    Plaintiff's depression did not represent a severe impairment.

10         Alternatively, even if the ALJ did err in evaluating Plaintiff's depression, the Ninth Circuit

11   has ruled that, when the ALJ has resolved step two in a claimant's favor, any error in designating

12   specific impairments as severe does not prejudice a claimant at step two. *See Burch v. Barnhart*,

13   400 F.3d 676, 682 (9th Cir. 2005) (even if ALJ erroneously failed to find an impairment "severe,"

14   this error "could only have prejudiced [the claimant] in step three (listing impairment

15   determination) or step five (RFC) because the other steps, including [step two], were resolved in

16   her favor"). Here, the ALJ found that Plaintiff had some severe impairments and resolved step two

17   in her favor. Therefore, any error in failing to find that Plaintiff's depression is a severe

18   impairment is harmless at step two.

19   **3.    The ALJ Gave Sufficient Reasons to Discount Plaintiff's Credibility**

20         Next, Plaintiff argues that the ALJ erred in rejecting her excessive pain symptoms. (Doc.

21   16 at 20-23). The Court disagrees.

22         **A.    Legal Standard**

23         A two-step analysis applies at the administrative level when considering a claimant's

24   credibility. *Treichler v. Comm. of Soc. Sec., 775 F. 3d 1090, 1098 (9th Cir. 2014)*. First, the

25   claimant must produce objective medical evidence of his or her impairment that could reasonably

26   be expected to produce some degree of the symptom or pain alleged. *Id*. If the claimant satisfies

27   the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony

28   regarding the severity of his or her symptoms only if he or she makes specific findings and

1  provides clear and convincing reasons for doing so. *Id.; Brown-Hunter v. Colvin*, 806 F.3d 487,

2  493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the

3  individual and to any subsequent reviewers the weight the adjudicator gave to the individual's

4  statements and reasons for that weight."). Factors an ALJ may consider include: 1) the applicant's

5  reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; 2)

6  unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of

7  treatment; and 3) the applicant's daily activities. *Smolen,* 80 F.3d  at 1282. Work records,

8  physician and third party testimony about the nature, severity, and effect of symptoms, and

9  inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*,

10  119 F.3d 789, 792 (9th Cir. 1997).

11  **B.      Analysis**

12       At the first step of the credibility analysis, the ALJ found that Plaintiff's "medically

13  determinable impairments could reasonably be expected to cause the alleged symptoms." AR 18.

14  However, at the second step of the analysis, the ALJ found Plaintiff's statements concerning the

15  intensity, persistence, and limiting effects of her symptoms were not entirely credible. AR 18. In

16  so doing, the ALJ provided several clear and convincing reasons for rejecting Plaintiff's excessive

17  pain testimony.

18       First, the ALJ found that Plaintiff failed to seek treatment and when treatment was

19  prescribed Plaintiff missed appointments and demonstrated poor compliance with her treatment

20  plan. AR 19.  "[U]nexplained or inadequately explained failure to seek treatment or to follow a

21  prescribed course of treatment" is a relevant factor in weighing a plaintiff's credibility.

22  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ considered that Plaintiff had

23  refused steroid injections and had not been compliant with physical therapy.  The ALJ noted that

24  Plaintiff "was discharged from PT [when Plaintiff] demonstrated poor self-motivation to engage in

25  strength training needed to improve trunk and core stability in order to decrease overuse of the

26  erector spinae musculature."  AR 19.   The ALJ also noted that Plaintiff declined psychotherapy

27  and physical therapy in 2013. She declined a steroid injection in 2012…[and] she was

28  noncompliant with treatment when finally engaged in two sessions of physical therapy."  AR 19.

1    Although Plaintiff argues her failure to seek additional treatment was due to a lack of financial

2    resources, Plaintiff failed to follow her treatment plan even when physical therapy services were

3    offered to her despite her finances. Plaintiff cannot obtain benefits if she fails to follow prescribed

4    treatment that would enable her to work. 20 C.F.R. § 416.930. It was not error for the ALJ to find

5    that Plaintiff's subjective complaints lacked credibility based on her failure to follow prescribed

6    treatment.

7         Second, the ALJ found that Plaintiff's impairments were well maintained on medication.

8    AR 19.  The ALJ was entitled to reject Plaintiff's credibility based on her successful response to

9    medication. *See Gerard v. Astrue*, 406 Fed. Appx. 229, 232 (9th Cir. 2010) (unpublished) (ALJ

10   properly discounted claimant's asserted severity of his anxiety and depression, observing in part

11   that claimant "was responding to psychotherapy and medication"); *Morgan v. Apfel*, 169 F.3d 595,

12   599 (9th Cir. 1999) (ALJ properly discredited the claimant's subjective complaints by citing

13   physician's report that mental symptoms improved with medication). Ample evidence

14   demonstrated that medication had effectively controlled Plaintiff symptoms. The ALJ noted that

15   Plaintiff reported that her pain was markedly improved with her current pain regimen.  AR 19.

16   Plaintiff's depression was also noted as stable. AR 19.    It was not error for the ALJ to consider

17   Plaintiff's satisfactory response to medication.

18        Third, the ALJ found Plaintiff's daily activities contradicted her pain testimony.  AR 22.

19   "Even where those activities suggest some difficulty functioning, they may be grounds for

20   discrediting the claimant's testimony to the extent that they contradict claims of a totally

21   debilitating impairment." *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012).  Here, Plaintiff's

22   daily activities included performing light housework, independently maintaining all her personal

23   needs, doing some shopping, preparing meals, using public transportation, walking 3 miles daily,

24   and driving.  AR 23-24; *see Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (Evidence of a

25   claimant's daily activities may be relevant to evaluating the credibility of a claimant's pain

26   testimony.).   The ALJ appropriately considered Plaintiff's activities of daily living, which

27   included daily care, physical activities, and interaction with others.

28        The ALJ also found Plaintiff less credible because she received unemployment benefits

and performed work activity after the alleged onset date. AR 24; *see* AR 207, 217-219. Continued receipt of unemployment benefits casts doubt on a claim of disability, as it shows an applicant holds himself out as capable of working. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014); *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (ALJ validly discounted Plaintiff's credibility, in part, because he "received unemployment insurance benefits [after being laid off] (apparently considering himself capable of work and holding himself out as available for work)"); *but cf. Webb*, 433 F.3d 683, 687-88 (9th Cir. 2005) (Ninth Circuit rejected adverse credibility determination where the Court found claimant not credible for having held himself out as being able to work during the period of alleged disability).

While Plaintiff argues that "her attempts to work—despite her condition—should not be used to deny benefits," here, the ALJ specifically noted that Plaintiff's ability to work after her onset date was of particular importance because of the nature of Plaintiff's alleged disability. The ALJ noted that Plaintiff's leg length discrepancy and accompanying pain from the motor vehicle accident, occurring twenty years earlier, had existed for a long time and had remained unchanged. AR 24. The ALJ concluded that Plaintiff's ability to work with this alleged longitudinal history of pain since the 1991 injury suggested that Plaintiff could work now.  AR 24.  Plaintiff's ability to work even after her disability onset date, only supported the ALJ's findings that the fact that Plaintiff's impairments—existing over twenty years—did not prevent Plaintiff from working during that "time strongly suggests that it would not currently prevent work."  *See Gregory v. Bowen*, 844 F.2d 664, 666-67 (9th Cir. 1988) (ALJ properly found "that [Plaintiff's] lengthy history of lower back problems did not render her disabled" where "the condition of [Plaintiff's] back had remained constant for a number of years and that her back problems had not prevented her from working over that time"); *Jourdan v. Comm'r*, 426 Fed.Appx. 499, 500 (9th Cir. 2011) (unpublished) (among other factors, plaintiff's ability to work for 10 years after her accident constituted "substantial evidence to support a  conclusion that the ALJ did not arbitrarily discredit [her] testimony"). The Court finds that, under these circumstances, Plaintiff's attempt to work was a relevant factor, supported by substantial evidence, which the ALJ properly considered in determining Plaintiff's credibility.

Given the above, the ALJ provided clear and convincing reasons that are supported by substantial evidence demonstrating that Plaintiff's subjective symptom testimony was not entirely credible. The ALJ specifically identified what testimony she found lacked credibility and the corresponding evidence that undermined Plaintiff's complaints. *Lester v. Chater*, 81 F.3d at 834. If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Accordingly, the ALJ's credibility findings are free of legal error.

**4.      The ALJ Properly Discounted Plaintiff's Lay Witness Credibility**

Plaintiff also challenges the ALJ's decision to reject the third party evidence from her family members, including her sisters, niece, and brother-in-law.  (Doc. 16 at 23).  Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of a lay witness").  In rejecting lay witness testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does not "clearly link his determination to those reasons" and substantial evidence supports the ALJ's decision. *Lewis*, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982).

The ALJ assessed the lay testimony as follows:

Kim Bowles, the claimant's sister notes the claimant cannot walk, sit, or stand for more than 15 minutes without having to lie down due to extreme pain.  She notes the claimants medications cause insomnia.

Brittany Bowles, the claimant's niece, reports witnessing the claimant having trouble walking, climbing stairs, lifting things, and laying down.  She also notes her aunt has insomnia that causes her to sleep during the day.

Seth Bowles, the claimant's brother-in-law notes that it is harder for the claimant to walk, stand or sit for any length of time, and that she is constantly in pain from her lower back to her feet.  He also noted the claimant has trouble sleeping at night without getting up and moving around.

These opinions are given little weight, as they are lay opinions based upon casual observation, rather than objective medical and testing.  The observations of such laypersons certainly do not outweigh the accumulated medical evidence regarding the extent to which the claimant's limitation can reasonably be considered severe.

In addition, the claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  At one point or another in the record (either in forms completed in connection with the application and appeal, in medical reports or records, in a third-party report, or in the claimant's testimony), the claimant has reported the following daily activities: walks dogs, prepares complete meals, fold clothes, sweeps, shops, uses public transportation, can count change, reads, talks to others on the telephone, use a computer, attend church, go out to eat. She has a license to drive and drives.  The claimant's ability to drive shows concentration and persistence, an ability to use hand and foot controls, an ability to turn [her] head (say, when backing up or changing lanes), visual acuity, and an ability to deal with the stress inherent in operation of a motor vehicle.  The claimant was walking 3 miles every day in July 2014.

Ultimately, the lay opinions noted above are unpersuasive for the same reasons that the claimant's own allegations do not fully persuade me, observing that they lack substantial support from objective findings in the record, and they are incompatible with the above reported activities of daily living.

AR 22-23.

A lay witness can provide testimony about Plaintiff's symptoms and limitations. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). Appropriate reasons include testimony unsupported by the medical record or other evidence and inconsistent testimony. *Lewis*, 236 F.3d at 512.  Further, "inconsistency with medical evidence is another such reason." *Bayliss*, 427 F.3d at 1218.

Here, the ALJ provided several germane reasons for discounting the lay source testimony. The ALJ summarized the family members' reports and validly explained that their statements were largely inconsistent with the accumulated medical evidence of record, as well as with allegations of total disability.  AR 22-23. This alone was a germane reason to reject the lay witness statement. *Bayli*ss, 427 F.3d at 1218 ("Inconsistency with medical evidence" is a germane reason

for discounting lay witness testimony); *Lewis*, 236 F.3d 503, 511-12 (9th Cir. 2001) (ALJ reasonably discredited lay witness statements where the symptoms they described were undocumented in the claimant's medical records). Second, the ALJ noted that much of the lay witness testimony mirrored Plaintiff's subjective description of her alleged limitations, which the ALJ discounted as lacking objective support and being inconsistent with her activities of daily living. AR 23. The ALJ discussed Plaintiff's activities of daily living and concluded that those activities of daily living did not support the degree of pain alleged by Plaintiff or the lay witness testimony. AR at 23-24. These are germane reasons to reject the lay witness testimony. *See Bayliss*, 427 F.3d at 1218 ("The ALJ accepted the testimony of Bayliss's family and friends that was consistent with the record of Bayliss's activities and the objective evidence in the record; he rejected portions of their testimony that did not meet this standard. The ALJ's rejection of certain testimony is supported by substantial evidence and was not error."). Accordingly, the Court finds that the ALJ's rejection of the lay witness testimony is supported by substantial evidence and was not error.

**4.    Step Five Analysis**

Lastly, Plaintiff argues that the hypothetical posed to the vocational expert did not include her "mental impairment of depression and the side effects of her intensive pain medication regimen." (Doc. 16 at 25). Plaintiff's argument is without merit.

Plaintiff does not argue that the hypothetical posed to the VE failed to include all the limitations found in the RFC, instead Plaintiff argues that because the ALJ did not include certain limitations in the RFC, the Step 5 analysis is flawed. Because, substantial evidence supports the ALJ's RFC finding, the hypothetical posed to the VE properly encompassed all of Plaintiff's limitations. *Thomas*, 278 F.3d at 956 ("In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental, supported by the record"); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) ("It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record").

Moreover, Plaintiff's contention that the ALJ's hypothetical to the vocational expert was

incomplete essentially restates her argument that the ALJ improperly discredited her testimony regarding the limiting effects of her symptoms. Although Plaintiff argues for a different reading of the record, the ALJ's interpretation of the evidence was rational and should be upheld. *See Tommasetti*, 533 F.3d at 1038.  On this record, the reliance by the ALJ on the vocational expert's testimony was proper.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgement in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Jamie Lynn Lenex.

IT IS SO ORDERED.

Dated**:   September 27, 2016**                          /s/ Barbara A. McAuliffe
                                                                            UNITED STATES MAGISTRATE JUDGE